Argued and submitted October 20, reversed and remanded for reconsideration December 29, 2011

Daniel R. STRUTZ,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and NW Dairy Distributors,
*Respondents.*

Employment Appeals Board
10AB3075; A147334

270 P3d 357

David C. Sorek filed the brief for petitioner.

Denise G. Fjordbeck, Attorney-in-Charge, Civil/Administrative Appeals, waived appearance for respondent Employment Department.

No appearance for respondent NW Dairy Distributors.

Before Ortega, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.

ORTEGA, P. J.

**ORTEGA, P. J.**

Claimant seeks judicial review of an Employment Appeals Board decision denying him unemployment benefits on the ground that he voluntarily left work without good cause. On review, claimant contends that he had good cause to leave work because he was instructed to follow what he believed to be an unethical work policy that was undisputedly contrary to industry standards. He argues that the board's conclusion that he had three reasonable alternatives to quitting work and that, therefore, his departure was without good cause is not supported by substantial evidence and substantial reason. We conclude that the board's conclusion is not supported by substantial reason and, accordingly, reverse and remand.

We take the facts from the board's findings and from the evidence in the record consistent with those findings. Employer, a dairy distributor, hired claimant as a driver to deliver dairy products to various stores. Claimant, who had worked in the dairy industry for 25 years, was aware of the industry standard to grant a store credit for expired dairy products removed from a store's inventory; he had never been directed otherwise. Contrary to that industry standard, claimant's trainer instructed him to not grant a store credit for the removed expired products because employer had implemented that policy. Some time later, Fletcher, employer's general manager and claimant's direct supervisor, accompanied claimant on his delivery route and reaffirmed the trainer's instructions to not grant a store credit for removed expired products. Although claimant believed that employer's policy was unethical, describing it as "like walking in the store and taking something off the shelf and walking out the front door[,]" he did not know what options he had under the circumstances: "I—one-on-one with an employee is one thing, but when the owner of the company tells me to do it, I just didn't really know what to do. It just made me feel sick inside."

Claimant ultimately complied with Fletcher's instructions. He later testified that, a few days later, he was called aside at the end of a shift and was asked to decide at that point whether or not he would continue working to

accommodate the company's needs so that employer could determine whether claimant would need to be replaced "with somebody that they felt would still be there." In light of the fact that the general manager of the company, Fletcher, had instructed him to comply with the policy, claimant believed that it would have been futile to raise his concerns with Fletcher and that no reasonable alternatives existed. Accordingly, he quit.

The Employment Department denied claimant's subsequent claim for unemployment benefits. Claimant appealed, and the administrative law judge (ALJ) set aside the department's decision, concluding that claimant voluntarily left work with good cause. Employer sought review, and the board reversed the ALJ's decision, holding that, because claimant had reasonable alternatives to quitting, he did not establish good cause for voluntarily leaving work. The board explained that "[i]t is not uncommon for an employee to implement certain policies of an employer with which the employee does not personally agree." Further, the board reasoned that, rather than quitting work, claimant had three reasonable alternatives: (1) inform the stores that employer's policy was contrary to industry standards; (2) raise his concerns directly with Fletcher or Fletcher's supervisor; or (3) continue working for employer while seeking other employment where the practices were more compatible with claimant's personal ethics. Claimant contends that the board's decision is not supported by substantial evidence and substantial reason.

We review the board's decision to determine whether its factual findings are supported by substantial evidence. ORS 183.482(8)(c). In light of the board's factual findings, we then determine "whether its conclusions reasonably follow from the facts found, that is, whether its conclusions are supported by substantial reason." *Weems v. Board of Parole*, 221 Or App 70, 74, 190 P3d 381 (2008).

ORS 657.176(2)(c) disqualifies a person who "[v]oluntarily left work without good cause" from receiving unemployment benefits. "Good cause for voluntarily leaving work under ORS 657.176(2)(c) is such that a reasonable and prudent person of normal sensitivity, exercising ordinary

common sense, would leave work." OAR 471-030-0038(4). Further, "good cause" is "an objective standard that asks whether a 'reasonable and prudent person' would consider the situation so grave that he or she had no reasonable alternative to quitting." *McDowell v. Employment Dept.*, 348 Or 605, 612, 236 P3d 722 (2010).

We first address the board's conclusion that claimant had the reasonable alternative of informing the stores that employer's policy was contrary to industry standards. There is no express or implied finding of fact as to whether claimant had the ability to communicate directly with the stores; indeed, some of claimant's testimony suggests that doing so would be unusual. Further, the board's findings do not address whether claimant could pursue that alternative consistently with his duty of loyalty to employer and, if not, how that alternative is reasonable. Accordingly, the board's first conclusion is not supported by substantial reason. *See Bremer v. Employment Division*, 47 Or App 1131, 1137-38, 615 P2d 1170 (1980) ("Before the [b]oard may hold that a claimant has failed to consider 'reasonable alternatives' to leaving work, it must be found that there were such alternatives. Without such a finding, the [b]oard's conclusion is not supported by its own findings.").

We next address the board's second conclusion, that claimant could have raised his concerns directly with Fletcher or Fletcher's supervisor. The board found that employer's policy was contrary to industry standards and that claimant was instructed to follow it. The board also found that, on one occasion, Fletcher, employer's general manager, accompanied claimant on his delivery route and reaffirmed employer's policy. The board fails to explain, in light of those circumstances, what difference it would have made for claimant to raise his concerns with his superiors. Indeed, the evidence suggests that any further discussion of claimant's concerns would have been useless. At the hearing, claimant testified that, because employer's general manager had directed him to follow employer's policy, he believed that there was "no recourse" to raise his concerns with the general manager and explained further that, "one-on-one with an employee is one thing, but when the owner of the company tells me to do it, I just didn't really know what to do." Further,

claimant's testimony regarding his last day, when he was asked to decide whether he would continue to accommodate employer's needs or be replaced "with somebody that they felt would still be there[,]" also suggests that any further discussion of his concerns would have been futile. As we have explained, "when the facts in the record present the issue of whether a discussion of reasonable alternatives to leaving work would have been useless, the [b]oard must also address that question." *Westrope v. Employment Dept.*, 144 Or App 163, 170, 925 P2d 587 (1996). Here, the board failed to do so. Accordingly, the board's second conclusion also is not supported by substantial reason.

Finally, with regard to the board's third finding—that, rather than quitting, claimant should have continued working while seeking other employment—this court has expressly rejected the proposition that a claimant must seek other employment before quitting work in order to establish "good cause" under the rule. *See, e.g., Warkentin v. Employment Dept.*, 245 Or App 128, 134-35, 261 P3d 72 (2011).

In short, the board's conclusion is not supported by substantial reason, and accordingly, we reverse and remand.

Reversed and remanded for reconsideration.